**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**CARRIE BANKS,**

                **Plaintiff,**            6:12-cv-596
                                                                       (GLS)

                    v.

**CAROLYN COLVIN,**
Acting Commissioner of Social
Security,

                **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Olinsky Law Group<br>300 S. State Street<br>5th Floor, Suite 520<br>Syracuse, NY 13202 | HOWARD D. OLINSKY, ESQ. |
| Rosicki, Rosicki Law Firm<br>26 Harvester Avenue<br>Batavia, NY 14020 | TANISHA T. BRAMWELL, ESQ. |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261 | ELIZABETH D. ROTHSTEIN<br>DAVID L. BROWN<br>Special Assistant U.S. Attorneys |
| Steven P. Conte<br>Regional Chief Counsel<br>Social Security Administration<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904 | |

New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

# **MEMORANDUM-DECISION AND ORDER**

## **I. Introduction**

Plaintiff Carrie Banks challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Banks' arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

## **II. Background**

On August 5, 2009, Banks filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since July 15, 2004. (*See* Tr.[1] at 75-76, 154-63.) After her applications were denied, (*see id.* at 77-82), Banks requested a hearing before an Administrative Law Judge (ALJ), which was held on March 25, 2011, (*see id.* at 40-74, 83). On June 13, 2011, the ALJ issued an unfavorable decision denying the requested

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 8.)

benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-6, 17-35.)

Banks commenced the present action by filing her Complaint on April 6, 2012 wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 11, 14.)

### III. <u>Contentions</u>

Banks contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (*See* Dkt. No. 11 at 13-22.) Specifically, Banks claims that the ALJ: (1) erred in determining her residual functional capacity (RFC); (2) improperly evaluated her credibility; and (3) rendered a step five determination that is unsupported by substantial evidence and the product of legal error. (*See id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (*See* Dkt. No. 14 at 12-22.)

### IV. <u>Facts</u>

3

The court adopts the parties' undisputed factual recitations. (*See* Dkt. No. 11 at 2-11; Dkt. No. 14 at 2-9.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. RFC Determination

Banks first contends that the ALJ's RFC determination is unsupported by substantial evidence and the product of legal error because the ALJ improperly weighed the medical opinions of record. (*See* Dkt. No. 11 at 13-18.) Specifically, Banks argues that the ALJ failed to properly apply the treating physician rule, and erred in affording significant

---

[2] Review under 42 U.S.C. §§ 405(g) and 1383(c)(3) is identical. As such, parallel citations to the Regulations governing SSI are omitted.

weight to the opinion of the state agency medical consultant. (*See id.*) The court disagrees.

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence[3] in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

In this case, the ALJ determined that Banks retained the capacity to, among other things, understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration, regularly attend to a routine and maintain a schedule, relate to and interact appropriately with others, and handle reasonable levels of simple, repetitive, work-related stress. (*See* Tr. at 24.) The ALJ based his determination on the opinions of consultative

---

[3] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

examiner Sara Long, whose opinion he afforded "some weight," and state agency medical consultant T. Harding, whose opinion he afforded "significant weight." (*Id.* at 26-27.) However, the ALJ afforded the opinion of treating psychiatrist Stephen Hudyncia "less weight," because it was inconsistent with Banks' treatment records and her ability to perform activities of daily living while caring for her five young children. (*Id.* at 27.)

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion.'" *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted).

Here, substantial evidence supports the ALJ's determination to discount Dr. Hudyncia's opinion. Dr. Hudyncia evaluated Banks in June 2006 and noted that she was doing remarkably well given her degree of isolation and opined that medication would be limited in effect, and, instead, case management and social support were his primary treatment recommendations. (*See* Tr. at 326-27.) This evaluation indicated Banks' Global Assessment of Functioning (GAF) score was sixty.[4] (*See id.*) Thereafter, the results of mental status examinations by Dr. Hudyncia were largely benign. (*See id.* at 319-25.) In May 2007, Dr. Hudyncia reported that Banks did "not want to have to take" medications, and, thus, took them erratically, making her treatment difficult to evaluate. (*Id.* at 317-18.) Accordingly, he counseled Banks to take her medication consistently. (*See id.*) Thereafter, her symptoms improved. (*See id.* at 310-16.) In April 2008, Dr. Hudyncia again evaluated Banks and reported that she was doing quite well and making some progress. (*See id.* at 308.) He described Banks as "reasonably high functioning" and assigned her a GAF

---

[4] The GAF scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004) . A GAF score of between fifty-one and sixty indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000).

score of seventy.[5] (*Id.* at 309.) Banks continued to treat with Dr. Hudyncia through 2009, when she moved to Binghamton and sought treatment at the Broome County Mental Health Department, and throughout this period her mental status examinations were largely unremarkable. (*See id.* at 299-307, 332-34.)

In January 2011, Banks returned to Utica and resumed treatment with Dr. Hudyncia. (*See id.* at 391-92, 431-32.) Upon examination, Banks was polite, euthymic, and in reasonably good spirits, and it was noted that she attended to her two children, who accompanied her, in an appropriate manner. (*See id.* at 391.) She was off all of her medications and her only complaints were of anxiety. (*See id.*) At this time, Dr. Hudyncia assigned to her a GAF score of seventy. (*See id.* at 392.) Subsequently, in March 2011, Dr. Hudyncia completed a medical source statement on behalf of Banks, and opined that she is seriously limited, but not precluded from sustaining an ordinary routine, working in coordination with or proximity to others without being distracted, getting along with co-workers or peers

---

[5] A GAF score of between sixty-one and seventy indicates "[s]ome mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000).

without distracting them or exhibiting behavioral extremes, and using public transportation. (*See id.* at 393-95.) According to Dr. Hudyncia, Banks is unable to meet competitive standards with respect to maintaining attention, maintaining regular attendance and punctuality, completing a normal workday and workweek, and performing at a consistent pace without an unreasonable number and length of rest periods. (*See id.* at 394.) Further, Banks can not meet competitive standards with respect to accepting instructions and responding appropriately to criticism from supervisors, responding appropriately to changes in a routine work setting, dealing with normal work stress, and traveling in unfamiliar places. (*See id.*) Dr. Hudyncia also reported that Banks would be off task more than twenty percent of the time, and would miss more than four days of work per month due to her impairments. (*See id.* at 395.)

Not only is Dr. Hudyncia's opinion unsupported by his own treatment records, as outlined above, but the remainder of the record evidence also indicates a greater degree of functioning than he opined. Specifically, on a mental status examination in December 2009, at the Broome County Mental Health Department, Banks was appropriately dressed, with no evidence of bizarre behavior or mannerisms, or psychomotor excitation or

9

retardation.  (*See id.* at 433-34.)  In addition, her speech was clear with a normal tone and rate, and thought processes well organized without loose associations or ideas of reference.  (*See id.* at 434.)  Banks' mood was mildly depressed and her affect was congruent with her mood.  (*See id.*) Her memory was intact for recent and past events, concentration was fair, intelligence was estimated as average, and her insight and judgment were adequate.  (*See id.*)  Throughout her treatment with the Broome County Mental Health Department, Banks was found to be neat, alert, and calm, with rational thoughts and coherent speech.  (*See id.* at 451-52, 454, 457, 459, 461, 463, 466.)  Other than, at times, having a mild to moderately depressed mood, constricted affect, and reported "periodic suspiciousness," the results of her examinations were benign.  (*Id.* at 459; *see id.* 451-52, 454, 457, 461, 463, 466.)

Further, on examination by Dr. Long, Banks was cooperative with good social skills, appropriate eye contact, fluent and clear speech, and coherent and goal directed thought processes.  (*See id.* at 340-44.)  At this time, Banks displayed a full range of appropriate affect and an euthymic mood.  (*See id.* at 341.)  Banks was able to complete serial threes accurately, and repeat three objects immediately and after five minutes.

(*See id.* at 341-42.) She also completed six digits forward and three digits backward. (*See id.* at 342.) Her insight and judgment were found to be fair to poor. (*See id.*) Banks reported grooming, cooking, cleaning, doing laundry, shopping, and scrap-booking. (*See id.*) Although she does not have many friends, she has good relationships with her family. (*See id.*) Based on this examination, Dr. Long opined that Banks can follow and understand simple instructions and perform simple tasks, maintain attention and concentration and a regular schedule, and learn new tasks. (*See id.*) According to Dr. Long, Banks can also perform complex tasks independently, make appropriate decisions, relate adequately well with others, and manage stress. (*See id.*)

After reviewing the record evidence, Dr. Harding opined that Banks can understand, carry out, and remember simple instructions, use appropriate judgment to make simple, work related decisions, respond appropriately to supervision, co-workers and work situations, and deal with changes in a routine work setting. (*See id.* at 376-78.) Although Banks may have some difficulty handling stressors or complex tasks, in Dr. Harding's opinion she can engage in simple work. (*See id.* at 378.)

Banks argues that the ALJ failed to provide good reasons for

11

rejecting the opinion of Dr. Hudyncia. (*See* Dkt. No. 11 at 16-17.) However, it is clear that the ALJ properly applied sections 404.1527(c) and he did not err in failing to methodically discuss each individual factor. *See* SSR 06-03p, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case."). Further, Banks contends that the ALJ erred in granting Dr. Harding's opinion significant weight because his review of the medical evidence did not include the records created after November 27, 2009, the date his opinion was issued. (*See* Dkt. No. 11 at 17-18.) However, the clinical findings throughout the record, including Banks' most recent mental status examination, support Dr. Harding's opinion. (*See* Tr. at 391-92, 433-34, 451-52, 454, 457, 459, 461, 463, 466.) Thus, the ALJ did not err in granting the opinion significant weight.

## B. Credibility Determination

Next, Banks argues that the ALJ failed to apply the appropriate standards in assessing her credibility. (*See id.* at 18-21.) The Commissioner counters, and the court agrees, that the ALJ properly assessed Banks' credibility, and his decision is supported by substantial evidence. (*See id.* at 17-20.)

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ determined that Banks' "statements concerning the

13

intensity, persistence and limiting effects of [her] symptoms [were] not fully credible to the extent they [were] inconsistent with the evidence of record." (Tr. at 26.) In making his determination, the ALJ reviewed the objective medical findings, Banks' activities of daily living, her work history, and the opinion evidence of record. (*See id.* at 25-27.) Despite Banks' argument, (*see* Dkt. No. 11 at 19), the ALJ properly considered her activities of daily living and noted that she cares for five children as a single mother, including two-year-old twins, (*see* Tr. at 26, 46, 70); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009).

 Banks contends that the ALJ's determination was flawed because he did not explicitly consider that chasing her twins around caused Banks significant pain, her medications were increased on several occasions, she wears stockings and has to elevate her legs to treat her varicose veins, and she suffered mood swings and sleep walking as side effects of her medication. (*See* Dkt. No. 11 at 20.) However, where "the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that "he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."

*Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).  Moreover, the ALJ explicitly considered the treatment Banks received, including medication, and noted that she was not on any medication at the time of her most recent mental examination when she was found to be polite, euthymic, and in reasonable good spirits with a GAF score of seventy. (*See id.* at 25-26, 391-92.)  Further, the ALJ explicitly mentioned Banks' complaints of pain after running after her twins due to her varicose veins, and noted, at step two, that Banks "treats her leg pain with medications, surgical stockings and elevation of her legs."  (*Id.* at 23; *see id.* at 25.) However, in making his credibility determination, he noted that Banks had failed to undergo the radiofrequency ablation procedures recommended by her treating surgeon to treat her varicose veins, as well as the results of her January 2011 physical examination which revealed full range of motion of her extremities, no muscle weakness, and an intact neurovascular exam.  (*See id.* at 26, 399.)

    Finally, Banks argues that the ALJ improperly discounted her subjective complaints due to her failure to consistently take her medication, without considering that, at various times throughout the record, she lacked insurance coverage, was pregnant, and reported side effects from taking

such medication. (*See* Dkt. No. 11 at 20-21.) In fact, the ALJ noted that, without first consulting her physician, Banks stopped taking her medications as prescribed on at least three occasions—once because it was causing nausea, once because she was concerned about gaining weight, and once because she did not want to have to take any medications. (*See* Tr. at 26, 302, 305, 317.) Notably, in March 2007, Dr. Hudyncia urged Banks to take her medications consistently, because her failure to do so likely created the impression that she required more medication than necessary. (*See id.* at 317-18.) The ALJ further explained that when Banks was on medication she reported some improvements in her symptoms, but even when she was not on medications, her mental status examinations were largely unremarkable. (*See id.* at 25-26.) Accordingly, the ALJ properly considered Banks' treatment, as well as her failure to comply with prescribed treatment.

Ultimately, it is evident from the ALJ's thorough discussion that his credibility determination was legally sound and, further, it is supported by substantial evidence. *See Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) (explaining that the "[f]ailure to expressly consider every factor set forth in the regulations is not grounds

16

for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record." (internal quotation marks and citation omitted)).

C. **Step Five Determination**

Lastly, Banks claims that the ALJ erred in determining that there was other work in the national economy which she could perform because: (1) he erred in evaluating her RFC and credibility; and (2) she suffered significant nonexertional limitations, making reliance on the Medical Vocational Guidelines inappropriate. (*See* Dkt. No. 11 at 21-22.) As discussed above, however, the ALJ's RFC and credibility findings were legally sound and are supported by substantial evidence. The ALJ found that Banks can perform the full range of unskilled sedentary work, except that she can only perform postural activities occasionally. (*See* Tr. at 28-29.) As the ALJ explained, only an ability to stoop occasionally is required in most unskilled sedentary positions, and other postural limitations or restrictions would not usually erode the occupational base. (*See id.*); SSR 96-9p, 61 Fed. Reg. 34,478, 34,481-82 (July 2, 1996). Thus, Banks' argument that the testimony of a vocational expert was required, is without merit. *See Bapp v. Bowen*, 802 F.2d 601, 603, 605 (2d Cir. 1986)

17

(explaining that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert" instead, such testimony is only required where the nonexertional impairments "significantly limit the range of work permitted by [a claimant's] exertional limitations." (internal quotation marks and citation omitted)).

D. **Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Banks' Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 16, 2013
Albany, New York

/s/ Gary L. Sharpe
Gary L. Sharpe
Chief Judge
U.S. District Court